CARTER, RITTENBERG & HAINLIN Co., Respondent, vs. McDONALD, Garnishee, Appellant.

FISK and another, Respondents, vs. McDONALD, Garnishee, Appellant.

*September 25 — October 13, 1896.*

*Debtor and creditor: Fraudulent conveyances: Evidence: Judgment.*

1. The evidence in this case (showing, among other things, that, after the commencement of actions against a failing debtor, another creditor having an unrecorded chattel mortgage surrendered the same and took in lieu thereof a bill of sale of all the debtor's property, consisting of a stock of goods) is *held* to show that the purpose of the exchange was to hinder, delay, and defraud the other creditors of the mortgagor.

2. The purchaser under such sale, having been garnished in actions previously commenced against the vendor, was not prejudiced by a judgment holding him liable for the proceeds of such property in his hands, in excess of the amount due him.

APPEALS from a judgment of the circuit court for Portage county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

The case is stated in the opinion of the court.

For the appellant the cause was submitted on the brief of *Raymond, Lamoreux & Park.*

For the respondents there was a brief by *Jones & Jones,* and oral argument by *D. Lloyd Jones.*

CASSODAY, C. J.   It appears from the record that for several years prior to July 15, 1893, the principal, defendant, Jennie A. Richardson, was engaged in the millinery business at Stevens Point; that during that time the garnishee, *McDonald,* was engaged in the business of real estate and loaning money at the same place; that at that time Richardson was indebted to *McDonald* in the sum of $972, and to secure the same she, at that time, gave him two notes, one due in January and the other in April, 1894, secured by a chattel mortgage on all her goods, wares, and merchandise; that September 1, 1893, both of these suits were commenced against Richardson; that September 5, 1893, *McDonald* filed his chattel mortgage; that September 14, 1893, Richardson, being indebted to the plaintiffs and others to the amount of $3,000, besides the notes and mortgage to *McDonald,* and being grossly insolvent, executed and delivered to *McDonald* a bill of sale, absolute in form, reciting a consideration of $1,162, of her stock of goods, consisting of the millinery stock in said store at Stevens Point; that such bill of sale was drawn by a lawyer residing some twenty miles from Stevens Point; that at the time of receiving that bill of sale *McDonald* gave Richardson $200; that the stock of goods covered by the chattel mortgage was then inventoried to *McDonald* at $2,043.32; that that bill of sale was filed in the city clerk's office at Stevens Point, September 16, 1893; that the property so included in the bill of sale comprised all the property then owned by Richardson; that *McDonald* thereupon ostensibly took possession, and put his daughter in charge, but Richardson (except when sick) in fact continued to conduct the business under the same sign, and accounted to *McDonald* for the proceeds of the sales; that September 19, 1893, the garnishee papers were served in both actions upon *McDonald* and Richardson at the same time; that *McDonald* answered and denied all liability; that the plaintiffs, respectively, took

issue with such answer; that upon the trial of such issues the court found, in effect, such of the facts stated as were disputed, and also, in effect, that *McDonald* took such bill of sale with actual knowledge of facts sufficient to put an ordinarily prudent and cautious man upon inquiry as to Richardson's insolvency at the time; that the bill of sale was intended by the parties thereto to be an absolute conveyance of the property therein mentioned, and was not given as mere security; that prior to the trial *McDonald* had realized from the sales of such stock more than $2,043.52. As conclusions of law the court found, in effect, that the bill of sale was executed with the intent and purpose to hinder and delay the creditors of Richardson in the collection of their just claims; that the said indebtedness of Richardson to *McDonald* was, at the time of giving the bill of sale, a *bona fide* indebtedness, incurred in good faith, and that *McDonald* was entitled to retain the same out of the proceeds of such sales; that *McDonald* had converted the property to his own use, and was liable to account for the value thereof, to wit, $2,043.52, less the amount of his claim of $1,184.96; that the *Carter, Rittenberg & Hainlin Company* having recovered judgment against Richardson for $540.46, and *Lydia C. Fisk et al.* having recovered judgment against her for $447.12, and the funds in the hands of *McDonald*, liable to garnishment, being insufficient to pay both judgments in full, they should share in said funds *pro rata*, according to the amount of their several judgments; that judgment was thereupon ordered against *McDonald*, as garnishee, according to such finding and conclusions. From such judgment *McDonald*, as such garnishee, brings these appeals.

The evidence clearly supports the findings of the trial court. The manifest purpose of surrendering the mortgage and taking back the bill of sale was to hinder, delay, and defraud the other creditors of the mortgagor. *Sutton v.*

*Hasey*, 58 Wis. 556; *Baum v. Bosworth*, 68 Wis. 196. This being so, the garnishee is in no position to complain because, under the statute, he was held liable for the proceeds of the sales in his hands in excess of the debt due himself. S. & B. Ann. Stats. sec. 2768; *La Crosse Nat. Bank v. Wilson*, 74 Wis. 398; *McCown v. Russell*, 84 Wis. 122; *Gore v. Brucker, ante*, p. 65. We find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.